UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

SCIENCE, LANGUAGE, AND ARTS
INTERNATIONAL SCHOOL,                                    Chapter 7
                                                        Case No.: 22-40065-ess


                            Debtor.
--------------------------------------------------------x
RICHARD J. MCCORD, ESQ.,
THE CHAPTER 7 TRUSTEE OF SCIENCE,
LANGUAGE, AND ARTS INTERNATIONAL
SCHOOL A/K/A SCIENCE LANGUAGE
AND ARTS                                                Adv. Pro. No. 22-01069-ess

                            Plaintiff,

                -against-

JENNIFER WILKIN
MARGARET REIMANN
KRISTIE BLASÉ
CHRISTIAN WHITTED
MARIA GUIGUE
BRETT JAMES

                            Defendants.
--------------------------------------------------------x

## MEMORANDUM DECISION ON MOTION TO DISMISS OF DEFENDANTS MARGARET REIMANN, KRISTIE BLASÉ, CHRISTIAN WHITTED, <u>MARIA GUIGUE, AND BRETT JAMES</u>

*Appearances:*

Richard J. McCord, Esq.
Thomas J. McNamara, Esq.
Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue
East Meadow, NY  11554
    *Attorneys for Plaintiff Richard J. McCord,*
    *Solely as Chapter 7 Trustee of Science,*
    *Language, and Arts International School*
    *a/k/a Science Language and Arts.*

Robert Modica, Esq.
John F. Watkins, Esq.
Coffey Modica O'Meara LLP
200 East Post Road (Suite 210)
White Plains, NY  10601
    *Attorneys for Defendants Margaret*
    *Reimann, Kristie Blasé, Christian*
    *Whitted, Maria Guigue, and Brett James.*

Howard Mankoff, Esq.
Marshall Dennehey Warner Coleman &
Goggin
425 Eagle Rock Avenue (Suite 302)
Roseland, NJ  07068
    *Attorneys for Defendant Jennifer Wilkin*

May 7, 2024

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

On January 13, 2022, Science, Language, and Arts International School ("SLA") filed a petition for relief under Chapter 7 of the Bankruptcy Code. *In re Science, Language, and Arts Int'l School*, Case No. 22-40065, ECF No. 1. Soon thereafter, Richard J. McCord, Esq. was appointed as the Chapter 7 trustee, and in that role, Mr. McCord is authorized to investigate and pursue claims and causes of action on behalf of SLA's Chapter 7 bankruptcy estate.

SLA was founded in 2013 by defendant Jennifer Wilkin as an independent elementary school offering French and Mandarin language immersion education. *See* Complaint ("Compl.") ¶ 11, ECF No. 1. On September 17, 2013, SLA was issued a provisional charter to operate a pre-kindergarten through fifth grade independent elementary school, by the Board of Regents on behalf of the New York State Department of Education. *See* Compl. ¶ 9.

On August, 31, 2022, the Chapter 7 Trustee commenced this adversary proceeding by filing a complaint against several former board members of SLA, including Ms. Wilkin, SLA's executive director and board chair, as well as board members Margaret Reimann, Kristie Blasé, Christian Whitted, Maria Guigue, and Brett James (the "Board Defendants"), for breach of fiduciary duty, gross negligence and/or reckless conduct, breach of duty of care, breach of duty of loyalty and obedience, and corporate waste in their capacities as officers and/or directors of SLA.

On May 30, 2023, the Board Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here by Bankruptcy Rule 7012(b), on grounds that the Complaint does not state a claim upon which relief may be granted. Motion to Dismiss Case, ECF No. 29 ("Board Motion to Dismiss" or "Board Mem."). Ms. Wilkin has also

separately moved to dismiss the Complaint, on substantially similar grounds.  Motion to Dismiss Adversary Proceeding, ECF No. 27 ("Wilkin Motion to Dismiss" or "Wilkin Mem.").  From time to time, and on April 9, 2024, the Court held pre-trial conferences in this adversary proceeding and hearings on the Motions to Dismiss, at which the Chapter 7 Trustee, the Board Defendants, and Ms. Wilkin appeared and were heard.  The Court also directed the parties to participate in mediation, to see if a consensual resolution could be reached.  *See* Mediation Referral Order, ECF No. 16.  The record on these Motions to Dismiss is now closed, and in this Memorandum Decision, the Court addresses the Board Motion to Dismiss.[1]

## Jurisdiction

This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This is a core proceeding pursuant to Judiciary Code Sections 157(b)(2)(A), (B), (E), (F), (H), and (O), and venue is proper before this Court pursuant to Judiciary Code Section 1409. "Core proceedings include, but are not limited to . . . matters concerning the administration of the estate;" "allowance . . . of claims against the estate," "orders to turn over property of the estate," and "determinations of the validity, extent, or priority of liens;" among other types of claims.  28 U.S.C. § 157(b)(2)(A), (B), (E), (K).  As core matters, this Court has constitutional authority to enter a final judgment, because the Chapter 7 Trustee's claims stem "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011).  *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015).

---

[1]  This Memorandum Decision addresses the Board Defendants' Motion to Dismiss.  The Court addresses Ms. Wilkin's Motion to Dismiss in a separate Memorandum Decision and Order, dated May 7, 2024, ECF Nos. 51, 52.

In addition, the Chapter 7 Trustee has consented to the entry of final orders and judgments, to the extent that such consent is required to meet the requirements of Article III of the United States Constitution.  *See* Compl. ¶ 6.

## Background

*SLA's Chapter 7 Bankruptcy Case*

This adversary proceeding arises in connection with the Chapter 7 Trustee's administration of the assets of SLA's bankruptcy estate.  On January 25, 2022, the Chapter 7 Trustee filed a Notice of Discovery of Assets, and a bar date for the filing of proofs of claim was set for April 25, 2022.  *In re Science, Language, and Arts Int'l School*, Case No. 22-40065, ECF No. 10.  Some 114 proofs of claim have been filed, including Proof of Claim 30, filed by CA 522 Fulton LLC, SLA's former landlord, in the amount of $25,256,873.45, and the total amount of filed claims is at least $27,786,851.25.

Three days later, on January 28, 2022, the Chapter 7 Trustee filed Motions for Rule 2004 Examinations of board members Ms. Guigue, Ms. Blasé, Mr. James, and Ms. Reimann, and board chair Ms. Wilkin.  *In re Science, Language, and Arts Int'l School*, Case No. 22-40065, ECF Nos. 14, 15, 16, 18, 19.  And soon thereafter, on March 2, 2022, the Chapter 7 Trustee filed a Motion for 2004 Examination of board member Mr. Whitted.  *In re Science, Language, and Arts Int'l School*, Case No. 22-40065, ECF No. 28.  Those motions were granted without opposition, and on March 8, 2022, the Court entered Orders authorizing Rule 2004 examinations of Ms. Guigue, Ms. Reimann, Mr. James, Ms. Blasé, and Ms. Wilkin.  *In re Science, Language, and Arts Int'l School*, Case No. 22-40065, ECF Nos. 31, 32, 33, 34, 35.  And on April 19, 2022, the Court entered an Order authorizing a Rule 2004 examination of Mr. Whitted.  *In re Science, Language, and Arts Int'l School*, Case No. 22-40065, ECF No. 45.

*This Adversary Proceeding*

On August 31, 2022, the Chapter 7 Trustee commenced this adversary proceeding by filing a complaint against Ms. Wilkin, as the former executive director, officer, and chair of the board of directors of SLA, as well as Ms. Reimann, Ms. Blasé, Mr. Whitted, Ms. Guigue, and Mr. James, as former members of the board of directors of SLA.

In the Complaint, the Chapter 7 Trustee describes a pattern of conduct by the Board Defendants and Ms. Wilkin that, he asserts, violated the duties that they each owed to SLA as board members and fiduciaries, and that gives rise to several claims for relief.

First, the Chapter 7 Trustee alleges that Ms. Wilkin breached her fiduciary duty as an officer, the executive director, and board chair of SLA by borrowing $200,000 from SLA in the form of an interest-free loan to purchase a summer camp in her name and "signed the joint written consent of SLA to the loan as both the 'Executive Director' of SLA, and as the 'Board Chair' of SLA," in violation of New York Not-for-Profit Corporation Law, as well as federal law and Internal Revenue Service ("IRS") regulations.  Compl. ¶¶ 34-37.  According to the Chapter 7 Trustee, Ms. Wilkin did not "fully repay that loan," and the camp "did not pay its agreed upon rent to Debtor SLA."  Compl. ¶¶ 36, 38.

Next, the Chapter 7 Trustee alleges that Ms. Wilkin caused SLA to let its existing lease expire in January 2021 by not paying rent, while committing SLA to new lease obligations "far beyond" its ability to pay.  Compl. ¶¶ 39, 42.  As a result, the Chapter 7 Trustee states that "[o]n April 14, 2021, SLA was sued by its landlord for approximately $24.6 million plus interest" and on "December 3, 2021, the Court in the landlord/tenant matter granted the landlord partial summary judgment in the amount of $6,107,421.03 plus 10 percent interest from February 9, 2021."  Compl. ¶ 43, 41.

Then, the Chapter 7 Trustee alleges that, despite SLA's landlord having already terminated the lease, Ms. Wilkin advised parents in mid-July 2021 that "rumor[s] that the school would not reopen in the Fall of that year were false," and collected almost $900,000 in tuition fees for that coming year.  Compl. ¶¶ 42, 44, 46.  And the Chapter 7 Trustee states that tuition deposits for the 2021-2022 school year "were not returned to parents when the school went out of business in August, 2021."  Compl. ¶ 46.

Next, according to the Chapter 7 Trustee:

> [The Board Defendants] failed to ensure that SLA was making payroll withholding taxes and unemployment taxes to the Internal Revenue Service on behalf of SLA employees, which it was not, resulting in a Proof of Claim filed by the Internal Revenue Service against SLA for more than $700,000 and a similar Proof of Claim filed by the New York State Department of Taxation and Finance against SLA for more than $100,000.

Compl. ¶ 65.

In addition, the Chapter 7 Trustee alleges that the Board Defendants "made financial decisions, or permitted Wilkin to make financial decisions, knowing that neither Wilkin nor the Board had accurate data, was relying on faulty financial projections, and which omitted obligations such as repayment of [a] loan, tax obligations, and never had audits performed on an annual basis."  Compl. ¶ 85.  And he alleges that the Board Defendants and Ms. Wilkin did not comply with SLA's bylaws, by failing to hold annual elections, failing to file required annual reports, and failing to fill certain required officer positions.  Compl. ¶ 87.

And lastly, the Chapter 7 Trustee alleges that the Board Defendants and Ms. Wilkin did not manage SLA in a prudent manner, breached their duty of obedience to the school's mission of maintaining an independent elementary school, and instead, permitted the school to be run "into the ground" by exercising no "oversight or due diligence with respect to the reckless and grossly negligent conduct of Defendant Wilkin."  Compl. ¶ 120.

Based on these and other allegations, the Chapter 7 Trustee asserts five claims for relief against some or all of the Board Defendants and Ms. Wilkin, and seeks to account for and recover damages arising from their alleged breach of fiduciary duty, gross negligence and/or reckless conduct, breach of duty of care, breach of duty of loyalty and obedience, and corporate waste in their capacities as officers and/or directors of SLA.

In particular, as to the Board Defendants, he asserts four claims for relief, as follows.

In the Second Claim for Relief, for breach of statutory and common law fiduciary duties, the Chapter 7 Trustee alleges that the Board Defendants breached fiduciary duties owed to SLA as directors by neglecting and failing to perform their duties as board members "in overseeing the management and disposition of SLA's assets" and in wasting and mismanaging corporate assets by "failing to ensure, devise, implement and maintain proper internal financial controls and operating procedures with respect to SLA's affairs," failing to "discover that SLA engaged in activities that resulted in its financial demise, substantial losses of tuition deposits and funds, and upon information and belief, conflicts of interest," and failing to "preserve and safeguard SLA's resources, and thereby recklessly and negligently dissipated such resources."  Compl. ¶¶ 103-05.

In his Third Claim for Relief, for gross negligence and recklessness in fulfilling their duties, the Chapter 7 Trustee alleges that the Board Defendants committed gross negligence and/or a reckless breach of their duty of care owed to SLA as directors for substantially the same reasons set forth in his Second Claim for Relief for breach of fiduciary duties, as described above.  Compl. ¶ 110.

In his Fourth Claim for Relief, for an accounting for corporate waste, the Chapter 7 Trustee seeks an accounting from the Board Defendants for the corporate waste that they

allegedly engaged in, again for substantially the same reasons stated in his Second and Third Claims for Relief.  Compl. ¶ 112.  He also seeks an accounting on grounds that the Board Defendants allowed tuition to be waived, in full or in part, for Ms. Wilkin's daughter and Ms. Reimann's granddaughter.  Compl. ¶¶ 50, 86, 114.  And he alleges that the Board Defendants engaged in corporate waste warranting an accounting by "permitting conflict of interest loans to be made to Defendant Wilkin for the purchase of a summer camp, Bonjour New York, and then failing to collect the loan in full, and by not ensuring the camp paid its agreed upon rent to SLA." Compl. ¶ 114.

And finally, in his Fifth Claim for Relief, the Chapter 7 Trustee alleges that the Board Defendants breached their duties of loyalty owed to SLA as directors for substantially the same reasons stated in his Second and Third Claims for Relief.  Compl. ¶¶ 118, 119.  He also alleges that they breached their duties of obedience owed to SLA's "mission of maintaining an independent elementary school to provide a comprehensive and regular curriculum, including French and Mandarin language immersion," by causing the school to close and "running it into the ground by lack of oversight or due diligence with respect to the reckless and grossly negligent conduct of Defendant Wilkin."  Compl. ¶¶ 118-20.

As a consequence of all of these matters, the Chapter 7 Trustee seeks a judgment against each of the Board Defendants, as well as Ms. Wilkin, jointly and severally, in the amount of $27 million.  Compl. ¶¶ 106, 111, 117, 121.

*The Board Defendants' Motion to Dismiss*

Board Defendants Ms. Reimann, Ms. Blasé, Mr. Whitted, Ms. Guigue, and Mr. James move to dismiss this case under Federal Rule of Civil Procedure 12(b)(6), made applicable here by Bankruptcy Rule 7012(b), on grounds that it does not state a plausible claim upon which

relief can be granted, for several reasons.[2]

First, the Board Defendants assert that the statute of limitations for a claim for breach of fiduciary duty is six years, "backdated from the bankruptcy filing date." Board Mem. at 7. As a consequence, they argue that any claim arising from alleged conduct that occurred before 2015 is barred by the statute of limitations. *Id.* And they assert that it is "impossible to know" the extent to which the Chapter 7 Trustee's allegations rely on such conduct, as "the majority of the Complaint's allegations are undated." *Id.*

Second, the Board Defendants argue that here, their conduct is protected by the business judgment rule. Board Mem. at 13. They state that the business judgment rule protects good faith conduct in the honest exercise of business judgment by members of a board of directors, "'absent claims of fraud, self-dealing, unconscionability or other misconduct.'" Board Mem. at 10 (quoting *Shapiro v. Rockville Country Club, Inc.*, 22 A.D.3d 657, 658 (N.Y. App. Div. 2d Dep't 2005) and citing *Lippe v. Bairnco Corp.,* 230 B.R. 906, 916-17 (S.D.N.Y. 1999)). And they assert that the Complaint does not allege that they acted in bad faith. Board Mem. at 11.

Instead, the Board Defendants argue, the Chapter 7 Trustee relies on conclusory assertions. And even if those allegations are not bare conclusions, they assert, allegations of recklessness or gross negligence are not sufficient to "'overcome the strong presumption of propriety'" under the business judgment rule. Board Mem. at 10 (quoting *Wilson v. Tulley*, 243 A.D.2d 229, 229 (N.Y. App. Div. 1st Dep't 1998)).

And the Board Defendants argue that the Chapter 7 Trustee "fails to allege that

---

[2] The Board Defendants also argue that they have qualified immunity from litigation under Section 720 of the New York Not-For-Profit Corporation Law. Board Mem. at 7-9. They did not include this argument in their reply memorandum of law, and confirmed that they withdraw this argument at oral argument on the Motion to Dismiss. *See* December 5, 2023 Hearing Transcript, at 28:9-23. Accordingly, this argument will not be considered further.

Defendants acted in bad faith or from any improper motive at any time," alleging instead only that "'upon information and belief'" there were "'conflicts of interest.'"  Board Mem. at 9 (quoting Compl. ¶ 104).  They argue that these kinds of allegations meet the plausibility standard only "when the supporting facts are uniquely in the control of the defendants," and urge that this is not the case here because, among other reasons, the Chapter 7 Trustee is now in possession of the "underlying facts necessary to try to demonstrate a conflict of interest."  Board Mem. at 9-10.

Third, the Board Defendants argue that the Complaint fails adequately to allege that SLA's damages were incurred *specifically* due to a wrongful act by any of them.  Board Mem. at 14.  They note that Rule 3016(b) of the New York Civil Practice Law and Rules ("CPLR") "requires that Plaintiff plead the breach of fiduciary duty causes of action with particularity," and argue that the Complaint does not meet this standard.  *Id*.  They also argue that "while the Complaint charges Board Defendants with failing to prevent SLA from going out of business, it does not plead facts establishing particular losses caused by specific breaches of any duty or identify opportunities to avoid such losses or turn them into profit."  *Id*.  And they argue that even under a liberal pleading standard, the Complaint's allegations of damages to the three principal main groups of creditors – the tax authorities, the landlord, and the parents of students – are not attributed to any act or omission by them.  Board Mem. at 14-15.

Fourth, the Board Defendants argue that the Chapter 7 Trustee's Third and Fifth Claims for Relief, for gross negligence and/or reckless breach of their duty of care, and breach of the duty of loyalty and duty of obedience, are duplicative of the Second Claim for Relief, for breach of fiduciary duty.  Board Mem. at 15.  They assert that because these causes of action seek to do no more than assert a claim for breach of fiduciary duty in different words, or "phrased alternately," based on the same facts and theories, and seeking identical damages, they should be

dismissed.  Board Mem. at 15-16.

Fifth, the Board Defendants argue that the Chapter 7 Trustee's Second and Third Claims for Relief based on reckless and/or grossly negligent conduct relating to SLA's use of tuition payments are barred under the *Wagoner* rule.  Board Mem. at 17.  And they state that the *Wagoner* rule provides that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."  Board Mem. at 17 (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991)).  They argue that "because the authorized acts of corporate directors are attributable to the corporation," and the Chapter 7 Trustee "'stands in the shoes of the corporation,'" the *Wagoner* rule bars him from bringing an action to recover for a wrong that was, in substance, committed by the school, since SLA used those funds.  Board Mem. at 17 (quoting *Wight v. BankAmerica Corp.,* 219 F.3d 79, 86 (2d Cir. 2000)).

Lastly, the Board Defendants argue that the Complaint fails to state a claim for an accounting, as set forth in the Chapter 7 Trustee's Fourth Claim for Relief.  Board Mem. at 18.  They point out that the Complaint does not state that "money or property was entrusted" to them, as required to state a plausible claim for an accounting.  *Id*.  Nor, they point out, has a demand for an accounting been made, so that this element of an accounting claim, too, is absent.  *Id*.  As a consequence, the Complaint falls short of alleging each of the four elements of an accounting claim, and this cause of action must be dismissed.  *Id*.

*The Chapter 7 Trustee's Opposition to the Motion to Dismiss*

The Chapter 7 Trustee disagrees that there are any deficiencies in any of the Claims for Relief set forth in the Complaint.  He points to the standards of Federal Rule of Civil Procedure 8, made applicable here by Bankruptcy Rule 7008, which require that a claim for relief contain,

among other things, "'a short and statement of the claim showing that the pleader is entitled to relief.'"  Plaintiff's Opposition to the Board Motion to Dismiss, ECF No. 31 ("Opp.") at 2 (quoting Fed. R. Civ. P. 8(a)(2)).  And the Chapter 7 Trustee responds, in substance, that at this stage in these proceedings, that standard is met.

The Chapter 7 Trustee responds that "pleading breaches of fiduciary duty . . . is governed by Federal Rule 8(a)," and that a heightened pleading standard for fraud claims, whether under CPLR Rule 3016(b) or Federal Rule of Civil of Procedure 9(b), does not apply.  Opp. at 3.  And here, he argues, the Complaint provides "sufficient factual information to support [each] claim[] at the pleading stage," and points to references to proofs of claim filed by the IRS, the New York State Department of Taxation, SLA's pre-petition landlord, and certain parents of students who are plaintiffs in a class action lawsuit against the school.  Opp. at 3-4.

The Chapter 7 Trustee also disagrees that the Complaint falls short as a consequence of the Board Defendants' arguments grounded in the business judgment rule.  Opp. at 7.  He responds that at this stage in the proceedings, the court "'should not consider whether a defendant's conduct is protected by the business judgment rule'" because a ruling on the applicability of the rule is a question of fact inappropriate for determination on a motion to dismiss.  Opp. at 7 (quoting *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1376 (S.D. Fla. 1991)).

The Chapter 7 Trustee states that bankruptcy and other courts in New York have found that a complaint may survive scrutiny under the business judgment rule where "'a complaint [charges] that a corporate officer or director breached her fiduciary duty . . . and . . . that the officer or director acted fraudulently or in bad faith, lack[ed] disinterested independence, ***or closed her eyes to the corporation's affairs and completely failed to act***.'"  Opp. at 7 (quoting

*RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 199 (S.D.N.Y. 2009)) (emphasis added in Opp.).  He further notes that courts also agree that "'while [corporate directors] are not liable for mere errors of judgment, when acting in good faith, the law will hold them accountable for that which they reasonably should have known or discovered in the discharge of their duties.'"  Opp. at 8 (quoting *Geltzer v. Bedke* (*In re Mundo Latino Market Inc.*), 590 B.R. 610, 617 (Bankr. S.D.N.Y. 2018)) (internal quotation omitted, citing cases).

And he argues that the allegations of the complaint show that the Board Defendants did not exercise "reasonable" business judgment as evidenced by their "misconduct," so that in all events, the business judgment rule provides no defense to his claims.  Opp. at 10-11.  That alleged misconduct includes, among other matters, the Board Defendants' breach of their fiduciary duties to SLA by "failing to ensure that SLA was paying payroll withholding taxes," "fail[ing] to ensure that IRS Form 990s were filed on behalf of SLA, causing the debtor to lose its tax exempt status for years," knowing that "Wilkin lacked the skillset to prudently manage the financial aspects of the school, but never even consider[ing] firing her even when it was learned that an employee that she had hired, and who reported to her, had stolen money from the school" nor did they "attempt to recover the stolen funds."  Opp. at 12-13 (citing Compl. ¶¶ 65, 67, 84).

The Chapter 7 Trustee also responds that the Board Defendants' misconduct is shown by admissions that Ms. Wilkin and the Board Defendants made in their Rule 2004 examinations.  In particular, he points to detailed allegations in the Complaint setting forth statements made by Ms. Wilkin and Board Defendants Reimann, Blasé, and Whitted.  Opp. at 11-17 (citing Compl. ¶¶ 91-93).

At Ms. Wilkin's examination, she acknowledged that she and the Board did not have a policy for overseeing a defalcating employee and ensuring financial obligations were paid, nor a "clear picture" of SLA's financial situation, "relied upon budget projections that were 'wildly

inaccurate'," and did not carry out their duties pursuant to SLA's bylaws by "failing to obtain an executed lease with the new landlord before moving out of the school's prior premises."  Opp. at 11-12 (quoting Compl. ¶¶ 54-56, 58).

As to Ms. Reimann, these include, among others, allegations in the Complaint and Rule 2004 examination admissions that Ms. Wilkin was not a good financial manager, and that the Board did not manage SLA's finances, approved a model which proved to be impossible to carry out financially, and knew about SLA's inability to pay bills as they came due as early as 2019. Opp. at 14 (citing Compl. ¶ 91).  These also include Ms. Reimann's acknowledgements that no direct action was taken in response to SLA's financial distress until SLA's landlord commenced litigation, that she did not recall seeing an audit report of SLA, and that the Board should have "'pressed for more accurate and regular, and professional financial records than what we actually received.'"  Opp. at 14 (citing and quoting Compl. ¶ 91) (internal quotations omitted).  And they include Ms. Reimann's statements that Ms. Wilkin told the Board that she was overwhelmed by her responsibilities.  Opp. at 14 (citing Compl. ¶ 91).

In addition, the Chapter 7 Trustee's allegations set forth Ms. Reimann's Rule 2004 examination testimony that as a Board member, she did not pay careful attention to SLA's financial records at any time, did not know that Ms. Wilkin had borrowed funds from the school, and was not aware that Ms. Wilkin signed a written consent to that loan on behalf of SLA as a director and board chair.  *Id*.  Ms. Reimann also stated that she was confused, and remains confused, about documents that she signed on behalf of SLA.  Opp. at 15 (citing Compl. ¶ 91). Ms. Reimann was not aware that SLA received a $150,000 loan from the U.S. Small Business Administration, or that SLA did not file all of its tax returns.  *Id*.  And she stated that Ms. Wilkin did not properly supervise SLA's staff member Joe Massa, leading to substantial financial

13

difficulties and losses.  *Id.*

And finally, the Chapter 7 Trustee alleges in the Complaint that Ms. Reimann acknowledged at her Rule 2004 examination that "'there was a failure on the part of the Board to supervise Defendant Wilkin,'" and that both Ms. Wilkin and the Board "'did not pay close enough attention to the financial aspects of the school and that led to some of the problems that resulted in the demise of the school.'"  Opp. at 15 (quoting Compl. ¶ 91) (internal quotations omitted).

As to Ms. Blasé, the Chapter 7 Trustee points to allegations in the Complaint and Rule 2004 examination admissions that SLA did not have a treasurer or vice president during the time that Ms. Blasé served on the Board of Directors and that the Board should have known that Ms. Wilkin borrowed money from SLA to acquire her summer camp, especially given the fact that Ms. Blasé's then-law firm represented Ms. Wilkin in that purchase.  Opp. at 15 (citing Compl. ¶ 92).  The Chapter 7 Trustee notes that Ms. Blasé acknowledged that SLA did not file taxes in a timely manner but should have, and that "'SLA's bookkeepers did not make proper entries into QuickBooks and StudentBilling.'"  Opp. at 16 (quoting Compl. ¶ 92).  In addition, while on the Board, Ms. Blasé "'voted in favor of SLA withdrawing the offer in compromise made to the IRS in connection with SLA's tax delinquency,'" and advised the Board that doing so "'would help shield [Ms. Wilkin] from personal liability.'"  Opp. at 15 (quoting Compl. ¶ 92).

And as to Mr. Whitted, the Chapter 7 Trustee notes a series of allegations in the Complaint and Rule 2004 examination admissions that, while on the Board and as Board Chair for six months, Mr. Whitted was not aware of whether the Board received annual reports on SLA's financial condition, that SLA's landlord claimed it was owed more than $6 million for rent and arrears, or of the extent of SLA's indebtedness.  Opp. at 16-17 (citing Compl. ¶ 93).  In

addition, Mr. Whitted did not know that "'failure to file the 990 returns resulted in an automatic revocation of a not-for-profit's tax exempt status.'" Opp. at 17 (quoting Compl. ¶ 93). Mr. Whitted was also unaware that the "'Board had the authority to remove Wilkin'" as an officer and director of SLA, or that when Mr. Whitted was not Board Chair, Ms. Wilkin held that position. Opp. at 16-17 (quoting and citing Compl. ¶ 93).

And the Chapter 7 Trustee points to allegations that Mr. Whitted acknowledged that "'[h]is company was a vendor to SLA and received payment of $2,000 to $4,000 per trimester,'" "'that employee Joe Massa was stealing money from the school,'" and that the handling of the defalcating employee was "'mismanagement to some degree.'" Opp. at 16-17 (quoting Compl. ¶ 93). Mr. Whitted also acknowledged that the Board did not manage SLA's affairs although it was their responsibility under SLA's bylaws, that the Board did not consider terminating Ms. Wilkin, and that despite SLA's need for funds, "'there was no fundraising.'" Opp. at 16-17 (citing and quoting Compl. ¶ 93). Further, Mr. Whitted acknowledged that members of the Board did not have "'the experience or qualifications of running a successful independent private school.'" Opp. at 17 (quoting Compl. ¶ 93). He believes SLA "'was insolvent in January of 2021.'" Opp. at 17.

In addition, the Chapter 7 Trustee responds that the Complaint's allegations show that the *Wagoner* rule does not shield the Board Defendants from liability for claims arising from SLA's collection and use of tuition payments for students at a time when, he asserts, the Board Defendants knew SLA would likely have to close if the Landlord was successful in its state court action against SLA for nonpayment of rent. Opp. at 13, 19 (citing Compl. ¶ 78). He also argues that the *Wagoner* rule applies to suits against third parties, not to actions brought by a corporation against its own officers and directors. Opp. at 19. And that is the situation here, he

asserts.  Opp. at 19 (citing *Keene Corp. v. Coleman* (*In re Keene Corp.*)*,* 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994)).

The Chapter 7 Trustee also responds that in the Fourth Cause of Action, the Complaint sets forth a plausible claim for an accounting.  Opp. at 20.  He argues that there is an "'absolute right to an accounting'" whenever there is a fiduciary relationship between the parties.  Opp. at 21 (quoting *Koppel v. Wien, Lane & Malkin*, 125 A.D.2d 230, 234 (N.Y. App. Div. 1st Dep't 1986)).

And he responds that in *In re State Street Associates, L.P.*, the bankruptcy court did no more than set forth the factors that must be proved to succeed on a claim for an accounting, which are "'(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'"  Opp. at 21 (quoting *State Street Assocs., L.P. v. New York State Urban Development Corp.* (*In re State Street Assocs., L.P.*), 323 B.R. 544, 561 (Bankr. N.D.N.Y. 2005)).  And he asserts that each of these factors, including those highlighted by the Board Defendants – money or property entrusted to them, and a demand for an accounting and a refusal – is adequately addressed in the Complaint because "[t]he Complaint cites to several distinct assets which were wasted and mismanaged by the Defendants" and the Chapter 7 Trustee served "pre-suit demands [for an accounting] on each of the Defendants through the use of applications under Federal Rule of Bankruptcy Procedure 2004(a)."  Opp. at 22.

Next, the Chapter 7 Trustee disagrees that the Complaint, and in particular, the breach of fiduciary duty claims, are barred by the statute of limitations.  Opp. at 23.  He does not dispute that "under New York law, the statute of limitations for a breach of fiduciary duty is six years."

*Id.* But he responds that this statutory period is tolled during the time of the fiduciary relationship and does not begin to run until the relationship is terminated – here, on the petition date. Opp. at 23 (citing *Westchester Religious Inst. v. Kamerman*, 262 A.D.2d 131, 131 (N.Y. App. Div. 1st Dep't 1999); *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 169-70 (E.D.N.Y. 2010); *In re State Street Assocs., L.P.*, 323 B.R. at 560-61).

As to the question of damages, here too the Chapter 7 Trustee responds that the Complaint adequately alleges damages arising from the Board Defendants' breaches of fiduciary duty. Opp. at 24. He argues that the heightened pleading standard of Rule 9(b) does not apply here, and even if it did, "the Complaint clearly links specified damage amounts to specified actions or inactions," including tuition funds collected and used, tuition that was waived for Ms. Wilkin's daughter and Ms. Reimann's granddaughter, unpaid tax debts, and the claim of SLA's landlord for unpaid rent. Opp. at 26-27.

And the Chapter 7 Trustee responds that the Complaint's Third and Fifth Claims for Relief – for gross negligence and/or reckless breach of the duty of care, and breach of duty of loyalty and obedience – are not impermissibly duplicative of the Second Claim for Relief – for breach of fiduciary duty. Opp. at 28. And he notes that "[e]ven if a 'cause of action may eventually be determined to be duplicative of another cause of action – such as breach of fiduciary duty or breach of loyalty – plaintiffs may proceed on alternative theories at this early state of the litigation.'" Opp. at 28 (quoting *ARB Upstate Comm'ns, LLC v. R.J. Reuter, LLC*, 93 App. Div. 3d 929, 934 (N.Y. App. Div. 3d Dep't 2012)). Instead, he argues, the Complaint shows that the facts alleged do not apply to each claim equally, and "each of those claims do not have the same elements." Opp. at 29.

Finally, the Chapter 7 Trustee requests that he be "granted leave to file an amended

complaint" should any part of the motions to dismiss be granted because this is the "first time the Trustee's allegations have been tested for sufficiency."  Opp. at 30.

*The Board Defendants' Reply*

The Board Defendants reply that the Chapter 7 Trustee's "claims are woefully misguided," and that neither the Complaint nor the Chapter 7 Trustee's opposition to the Motion to Dismiss set forth "facts sufficient to overcome the business judgment rule or associate any damages with any alleged breach."  Board Reply, ECF No. 38 ("Board Reply") at 4.  The Board Defendants also reply that, contrary to the Chapter 7 Trustee's assertions in his opposition, the business judgment rule applies under these circumstances and protects them from liability, even at the pleading stage because, among other reasons, the Chapter 7 Trustee "failed to allege that Defendants acted in bad faith or from improper motive at any time."  Board Reply at 5-6.  And the Board Defendants reply that the Chapter 7 Trustee "does not cite to any case which unequivocally holds that the Court may not consider a dismissal motion based on the Business Judgment Rule."  Board Reply at 7.

In addition, the Board Defendants reply that the Chapter 7 Trustee relies on mere conclusory assertions of bad faith, and that his allegations of gross negligence and recklessness do not constitute bad faith.  Board Reply at 5, 8.  Rather, they argue, only alleged conduct that "is substantially worse than ordinary negligence" can survive scrutiny under the business judgment rule.  Board Reply at 8.  The Board Defendants also reply that "New York law holds that a choice to continue operating an insolvent entity when taken in good faith" will not result in liability, and that the Chapter 7 Trustee does not allege the tort of "deepening insolvency." Board Reply at 9 (quoting *Bondi v. Bank of Am. Corp.* (*In re Parmalat Sec. Litig.*)*,* 383 F. Supp. 2d 587, 601-02 (S.D.N.Y. 2005)).  To the contrary, they argue that their efforts to help SLA

18

"become solvent again" were in the best interests of the school's not-for-profit mission.  Board Reply at 10.

In addition, the Board Defendants reply that the doctrine of waste does not apply as an exception to the business judgment rule, because the Chapter 7 Trustee's allegations do not suggest that the Board Defendants were somehow involved in diverting corporate assets for an improper or unnecessary purpose.  *Id.*

The Board Defendants also reply that the Chapter 7 Trustee has not overcome their arguments that the Third and Fifth Causes of Action are, in substance, impermissibly duplicative of the Second Cause of Action because they recite and are based on many of the same facts "verbatim" as set forth in that claim, and because they seek damages that are neither distinct nor different.  Board Reply at 11-12.  They also state that "while claims for gross negligence or recklessness are sometimes advanced to seek punitive damages, punitive damages are not a separate cause of action under New York law" and cannot be sought by pleading duplicate causes of action.  Board Reply at 12.

As to the *Wagoner* rule, the Board Defendants reply that the *Wagoner* rule applies to bar the Chapter 7 Trustee's claims here, for several reasons.  *Id.*  First, they argue there is no allegation that they "took tuition money for themselves," that the parents who paid that tuition and seek to recover it have "already commenced an action on this claim," and that the Chapter 7 Trustee "can seek to set aside the payments of the funds to other creditors."  Board Reply at 13.  The Board Defendants also note that "because the authorized acts of corporate directors are attributable to the corporation," and thus imputed to that entity, the Chapter 7 Trustee is "barred from suing to recover for a wrong" that he, as the present representative of SLA, "essentially took part in."  *Id.*

And finally, the Board Defendants reply that the Chapter 7 Trustee is not entitled to an accounting because the Complaint does not allege that they received any property or "a single asset that could be returned to the estate for the benefit of creditors," which would impose upon them the burden of account, as required under the criteria set forth in *In re State Street Associates, L.P.*  Board Reply at 14.

### The Applicable Legal Standards

#### *The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6), made applicable here by Bankruptcy Rule 7012(b), permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted.  As the Supreme Court has held, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As the Court explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court must first "'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).  But a court is not required to accept as true those allegations that amount to no more than legal conclusions. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Twombly*, 550 U.S. at 555.  Second, the court must then consider whether these well-pleaded factual allegations state a "'plausible claim for relief.'" *In re Dreier LLP,*

452 B.R. 391, 407 (Bankr. S.D.N.Y. 2011) (quoting *Iqbal,* 556 U.S at 678).  Doing so requires

courts to use a reasonableness standard in evaluating plausibility:  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the

complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it

by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  *See Gillingham v. Geico*

*Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (quoting *Hayden v. Cty. of Nassau,* 180

F.3d 42, 54 (2d Cir. 1999) (stating that when considering a motion to dismiss for failure to state a

claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents

incorporated by reference)).

*The Pleading Requirements of Federal Rule of Civil Procedure 8(a)*

Federal Rule of Civil Procedure 8(a), made applicable here by Bankruptcy Rule 7008,

sets forth the general pleading rules for a civil claim.  It states:

> [A] claim for relief must contain:
>
> (1)    a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2)    a short and plain statement of the claim showing that the pleader is entitled
>        to relief; and
>
> (3)    a demand for the relief sought, which may include relief in the alternative
>        or different types of relief.

Fed. R. Civ. P. 8(a)(1)-(3).

As the Supreme Court explained in *Twombly,* "detailed factual allegations" are not

required to satisfy the pleading standard under Rule 8(a)(2).  550 U.S. at 555.  However, the rule

"demands more than an unadorned, . . .  accusation."  *Iqbal*, 556 U.S. at 678.  Instead, the

pleading "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). In evaluating whether the pleader is entitled to relief under Rule 8(a)(2), courts may identify conclusory allegations that "are not entitled to the assumption of truth" and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664 (citing *Twombly*, 550 U.S. at 555).

And where claims, such as a claim for breach of fiduciary duty, arise from alleged actions that fall short of fraud, Rule 8(a), rather than Rule 9(b), sets the applicable bar. That is, as one court noted, where a breach of fiduciary duty claim is grounded in "conduct not amounting to fraud, such as a breach of a duty of care, disclosure, or loyalty," the general pleading standards of Rule 8(a), rather than "the heightened pleading standards of Rule 9(b)," apply. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006).

### The Pleading Requirements of Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b), made applicable here by Bankruptcy Rule 7009, sets forth the rules for pleading special matters. It provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

As this Court and others in the Second Circuit have found, claims involving allegations of fraud "trigger particular and heightened pleading requirements under Federal Rule of Civil Procedure 9(b)." *Kaschner v. Venticinque* (*In re Venticinque*)*, 643 B.R. 708, 722 (Bankr. E.D.N.Y. 2022) (citing *S&T Bank v. Howard* (*In re Howard*), 2009 WL 4544392, at *2 (Bankr.

S.D.N.Y. 2009)).  In particular, the complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *In re Venticinque,* 643 B.R. at 722 (quoting *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004)).

<u>The Elements of a Breach of Fiduciary Duty Claim Under New York Law</u>

Under New York law, the elements of a claim for a breach of fiduciary duty are: (1) "the existence of a fiduciary duty"; (2) "a knowing breach of that duty"; and (3) "damages resulting therefrom."  *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014) (citing *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir. 2011)).  *See Rut v. Young Adult Inst., Inc.,* 74 A.D.3d 776, 777 (N.Y. App. Div. 2d Dep't 2010) (listing similar elements of a breach of fiduciary duty claim:  "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct" (internal citations omitted)).  Specifically, in establishing whether a fiduciary duty exists that could be breached, courts have found that "[a] fiduciary relationship exists under New York law . . . 'under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'"  *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (quoting *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir. 1991)).

New York Not-For-Profit Corporation Law Section 717 provides:

(a)  Directors, officers, and key persons shall discharge the duties of their respective positions in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. . . .

(b)  In discharging their duties, directors, officers, and key persons when acting in good faith, may rely on information, opinions, reports or statements including financial statements and other financial data, . . . so long as in so relying they shall be acting in good faith and with that degree of care specified in

> paragraph (a) of this section.  Persons shall not be considered to be acting in
> good faith if they have knowledge concerning the matter in question that
> would cause such reliance to be unwarranted.  Persons who so perform their
> duties shall have no liability by reason of being or having been directors,
> officers, or key persons of the corporation.

New York Not-For-Profit Corporation Law § 717.

<u>*The Statute of Limitations for a Breach of Fiduciary Duty Claim*</u>

Under New York Law, "an action by or on behalf of a corporation against a present or former director [or] officer . . . for an accounting . . . , or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith" must be commenced within six years.  CPLR § 213(7).  Courts in this circuit have found that the six-year statutory period applies to actions in which a corporation sues a former officer or director for breach of fiduciary duty.  *See Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 434-35 (S.D.N.Y. 2015) (finding that a complaint for damages caused by an alleged breach of fiduciary duty by former not-for-profit chief executive officer was timely brought within the six-year statute of limitations); *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 741 (S.D.N.Y. 1997) (holding that the six-year period under CPLR § 213(7) applied to plaintiff's breach of fiduciary duty claims).

In addition, under New York law, the limitations period for claims arising out of a fiduciary relationship "does not commence 'until . . . the relationship has been . . . terminated.'" *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) (quoting *Westchester Religious Inst.*, 262 A.D.2d at 131).  The "'statutory period [is] tolled between alleged fiduciary misconduct' and the date on which the fiduciary relationship is . . . ended." *Golden Pacific Bancorp*, 273 F.3d at 519 (quoting *Westchester Religious Inst.*, 262 A.D.2d at 132).

And finally, Bankruptcy Code Section 108 provides that, as long as the period of time to

commence an action has not expired before the date of filing of the petition, "the trustee may commence such action only before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief." 11 U.S.C. § 108(a). That is, the trustee has at least two years from the filing of the bankruptcy case to bring any cause of action that would have been timely as of that date.

## The Elements of a Claim for Gross Negligence or Recklessness Under New York Law

The elements of a claim for gross negligence under New York law are "'(1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" *Schwartzco*, 60 F. Supp. 3d at 355 (quoting *Purchase Partners, LLC v. Carver Federal Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012)). *See Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 289 (W.D.N.Y. 2014) (quoting *Purchase Partners*, 914 F. Supp. 2d at 497 and applying the elements of a gross negligence claim set forth in *Purchase Partners*).

In applying these elements, courts consider the particular facts asserted in the complaint. For example, in *Alley Sports Bar*, the court found that the plaintiff "sufficiently pled [that Defendant owed her] a duty of care to sustain a claim for negligence to survive a motion to dismiss" because, "but for Defendant's failure to adequately drain the system as it promised to do, Plaintiff would not have been injured." *Alley Sports Bar*, 58 F. Supp. 3d at 289. And the Court noted that the plaintiff "sufficiently pled a claim for *gross* negligence to survive a motion to dismiss" because the "Defendant's behavior 'smacks' of intentional wrongdoing or 'evinces a reckless disregard for the rights of others.'" *Alley Sports Bar*, 58 F. Supp. 3d at 289 (quoting *Purchase Partners*, 914 F. Supp. 2d at 497) (emphasis added).

25

Courts in this Circuit have also observed that, "'[g]ross negligence,' an exception to the protection afforded by the business judgment rule, 'generally requires that officers, directors, and managers fail to inform themselves fully and in a deliberate manner.'" *Sama v. Mullaney* (*In re WonderWork, Inc.*)*,* 626 B.R. 94, 113 (Bankr. S.D.N.Y. 2020) (quoting *Sama v. Mullaney* (*In re WonderWork, Inc.*), 611 B.R. 169, 197 (Bankr. S.D.N.Y. 2020)). *See, e.g.*, *F.D.I.C. v. Abel*, 1995 WL 716729, at *8 (S.D.N.Y. Dec. 6, 1995) (finding that directors' failure "to act in an informed and deliberate manner" amounted to gross negligence, an exception to the business judgment rule, and denying the dismissal of the gross negligence claim). Put another way, gross negligence claims are adequately asserted and will survive scrutiny on a motion to dismiss where a fiduciary's decision-making is "'so grossly off-the-mark as to amount to reckless indifference or a gross abuse of discretion.'" *In re WonderWork*, 626 B.R. at 113 (quoting *In re WonderWork*, 611 B.R. at 197).

<ins>The Elements of a Claim for Breach of Duty of Loyalty and Obedience Under New York Law</ins>

Under New York law, an agent's duty of loyalty and obedience prohibits the agent from "'acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977)). And a breach of duty of loyalty and obedience occurs when "a fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation," such as in circumstances where "the fiduciary has a conflict of interest or fails to act in good faith." *In re WonderWork*, 626 B.R. at 112 (quoting *In re WonderWork*, 611 B.R. at 194-95 (citing cases)).

<ins>The Elements of a Claim for an Accounting</ins>

At the outset, courts agree that under New York law, "whenever there is a fiduciary relationship between the parties, . . . there is an absolute right to an accounting notwithstanding the existence of an adequate remedy at law." *Koppel*, 125 A.D.2d at 234.  As one New York appellate court found, "[t]he mere existence of a fiduciary relationship gives rise to a claim for an accounting." *Dawes v. J. Muller & Co.*, 176 A.D.3d 473, 474 (N.Y. App. Div. 1st Dep't 2019).

At the same time, courts in this circuit have also found that "even in the absence of any element of mutuality or of trust relationship," cases involving "issues relating to an account of a complicated character" can be "a sufficient reason for a court of equity to assume jurisdiction thereof." *Ball v. Soundview Composite Ltd.* (*In re Soundview Ltd.*), 543 B.R. 78, 123 (Bankr. S.D.N.Y. 2016) (quoting N.Y. Jur. 2d Accounts and Accounting § 34).

Pursuant to New York Not-For-Profit Corporation Law Section 720(a):

[A]n action may be brought against one or more directors, officers, or key persons of a corporation

(1) To compel the defendant to account for his official conduct in the following cases:

(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.

(B) The acquisition by himself, transfer to others, loss, or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.  . . .

(2) To set aside an unlawful conveyance, assignment, or transfer of corporate assets, where the transferee knew of its unlawfulness.

(3) To enjoin a proposed unlawful conveyance, assignment, or transfer of corporate assets, where there are reasonable grounds for belief that it will be made.

N.Y. Not-For-Profit Corp. Law § 720-a.

Under New York law, in order for "a court to award an equitable accounting," a principal

must also demonstrate the lack of availability of an adequate remedy at law.  *Soley v. Wasserman*, 639 F. App'x 670, 680 n.5 (2d Cir. 2016).  And to assert a claim for an accounting, the complaint must show "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal."  *In re State Street Assocs., L.P.*, 323 B.R. at 561.

**Discussion**

By this Motion, the Board Defendants ask this Court to enter judgment dismissing all of claims asserted by the Chapter 7 Trustee in the Complaint, on grounds that the Complaint does not state a claim upon which relief may be granted.  They seek this relief pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here by Bankruptcy Rule 7012.

This Motion calls for the Court to address several questions.  At the outset, the Court considers whether the Board Defendants have shown that some or all of the Chapter 7 Trustee's claims must be dismissed because they are untimely under the applicable statute of limitations. Next, the Court considers whether the Board Defendants have shown that the Chapter 7 Trustee's claims must be dismissed because he does not have standing under the *Wagoner* rule. Then, the Court considers whether the Board Defendants have shown that the Chapter 7 Trustee's claims must be dismissed because they are barred by the business judgment rule.  Next, the Court considers whether the Board Defendants have shown that the Chapter 7 Trustee's claim for an accounting should be dismissed.  And then, the Court considers whether the Board Defendants have shown that the Chapter 7 Trustee's claims must be dismissed because they do not adequately state that their actions caused damage to SLA.  Finally, the Court considers whether the Board Defendants have shown that the Chapter 7 Trustee's Third and Fifth Claims

must be dismissed because they are impermissively duplicative of his Second Claim.

In this context, it is worth noting that, at this stage in these proceedings, it is *not* the task of the Chapter 7 Trustee to *prove* any of these matters.  A motion to dismiss under Rule 12(b)(6) tests the adequacy of the complaint and its well-pleaded factual allegations, rather than the sufficiency of the proof.  And as the Supreme Court has held, to survive Rule 12(b)(6) scrutiny, more than speculation is required.  *Twombly*, 550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level").  The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Therefore, this motion to dismiss calls for the Court to accept the factual allegations set forth in the Chapter 7 Trustee's Complaint as true, and to draw all reasonable inferences in his favor.  Questions of proof will be left for another day.

### *Whether the Board Defendants Have Shown that the Chapter 7 Trustee's Claims Must Be Dismissed Because They Are Barred by the Applicable Statute of Limitations*

The first question that the Court addresses is whether the Board Defendants have shown that the Chapter 7 Trustee's claims must be dismissed because they are barred by the applicable statute of limitations under New York law.

New York's CPLR provides that "an action by or on behalf of a corporation against a present or former director [or] officer . . .  for an accounting . . . , or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith" must be commenced within six years.  CPLR § 213(7).  Courts agree that this six-year limitations period applies to actions in which a corporation sues a former officer or director for breach of fiduciary duty.  For example, as one court observed, a not-for-profit's 2014 suit for damages arising from an alleged breach of fiduciary duty by a former chief executive officer and executive director, who served from 1979 to 2009, fell "squarely under the six-year

period provided under CPLR 213(7) for the claims of corporations against their former directors or officers." *Levy*, 103 F. Supp. 3d at 434-35. *See Whitney Holdings, Ltd.*, 988 F. Supp. at 741 (stating that "New York courts have held certain breach of fiduciary duty claims to be equitable in nature and therefore governed by CPLR § 213(1) and its six year period").

Both the Board Defendants and the Chapter 7 Trustee agree as to this much. *See* Board Mem. at 7; Opp. at 23. Thus, the applicable statute of limitations under New York law for each claim here is six years.

In addition, courts in this Circuit agree that the limitations period for claims arising from fiduciary relationships begins to run only when "'the relationship has been . . . terminated.'" *Golden Pacific Bancorp*, 273 F.3d at 518 (quoting *Westchester Religious Inst.*, 262 A.D.2d at 131 and citing cases). That is, the "'statutory period [is] tolled between alleged fiduciary misconduct' and the date on which the fiduciary relationship . . . ended." *Golden Pacific Bancorp*, 273 F.3d at 519 (quoting *Westchester Religious Inst.*, 262 A.D.2d at 132).

In addition, under Bankruptcy Code Section 108(a), if the period of time to commence an action has not expired before the date of filing of the petition, "the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief." 11 U.S.C. § 108(a).

The Board Defendants argue that the "statute of limitations for a breach of fiduciary duty in an action by an entity against a board member bars recovery based on the conduct before 2015." Board Mem. at 7. And they urge that "it would be impossible to know" to what extent the Complaint relies upon "pre-2015 conduct," because "the majority of the Complaint's allegations are undated." *Id*.

The Chapter 7 Trustee responds that the statutory period is tolled during the fiduciary relationship and does not begin to run until the relationship is terminated – and here, that occurred on January 13, 2022, the date that this bankruptcy case was commenced.  Opp. at 23. He also notes that "any statute of limitations to sue any of the Defendants for their acts or omissions while an officer or director of [SLA] was tolled from the time of such fiduciary misconduct until they were each no longer a fiduciary of [SLA]."  Opp. at 24.  And here, six years prior to the date this bankruptcy case was filed is January 13, 2016.

Here, the record shows that the Chapter 7 Trustee brings this action on behalf of SLA, a non-profit corporation, against its former officers and directors, including the Board Defendants, and alleges that the Board Defendants breached their fiduciary duties as members of the board of directors of SLA.  Compl. ¶ 1.

And even if the relevant period were bounded by the six years prior to the filing of this bankruptcy case, the record also shows that in the Complaint, the Chapter 7 Trustee has described a series of actions and failures to act by SLA's officers and directors, and a period of financial distress at SLA, that comes within the six years from January 2016 to January 2022. The Board Defendants have not identified any material allegations of conduct that occurred before that time, nor have they included any reference to the statute of limitations in their Reply, and this Court's review of the Complaint similarly does not identify any allegations that are particular to that time.

That is not to say that the statute of limitations has no role to play in this action.  For example, if the Chapter 7 Trustee seeks to establish his claims based on actions or failures to act by the Board Defendants that occurred long before the six years that precede the commencement of this bankruptcy case, and there are no other grounds to bring them within the limitations

31

period, then the question of the limitations period may need to be revisited.  But at this stage in these proceedings, the plausibility of the Chapter 7 Trustee's claims is not undermined by the fact that they are, as the parties agree, subject to a six-year statute of limitations.

For these reasons, and based on the entire record, the Board Defendants have not shown that the Chapter 7 Trustee's claims must be dismissed because they are barred by the applicable statute of limitations.

### *Whether the Board Defendants Have Shown that the Chapter 7 Trustee's Claims Must Be Dismissed Because He Does Not Have Standing Under the* Wagoner *Rule*

The next question that the Court addresses is whether the Board Defendants have shown that the Chapter 7 Trustee's claims – and specifically, his claims arising from SLA's collection and use of tuition payments – must be dismissed because he does not have standing to bring them under the *Wagoner* rule.

The starting point for addressing this question is the role of the Chapter 7 Trustee and the tasks assigned to him.  Bankruptcy Code Section 704(a) states that the trustee "shall . . . collect and reduce to money the property of the estate."  11 U.S.C. § 704(a)(1).  And Section 541(a) states that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" – including, of course, any claims that the debtor may have against any other party.  11 U.S.C. § 541(a)(1).  That is, taken together, Sections 704 and 541 place the Chapter 7 Trustee in the place of SLA, and permit him to bring any suit that SLA could have brought as of the date that it filed for bankruptcy protection.

To be sure, the causes of action in question must be "'property of the estate' to which the Trustee takes ownership."  *Buchwald v. The Renco Group, Inc.* (*In re Magnesium Corp. of America*), 399 B.R. 722, 757 (Bankr. S.D.N.Y. 2009)).  But where the debtor has claims against its fiduciaries, including its officers and directors, at the time of filing its bankruptcy case, courts

have not hesitated to conclude that the trustee may pursue those claims.  As the Second Circuit

has observed, "[w]e agree that a bankruptcy trustee, suing on behalf of the debtor under New

York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries."

*The Mediators, Inc. v. Manney* (*In re Mediators, Inc.*), 105 F.3d 822, 826-27 (2d Cir. 1997).

And as one bankruptcy court has noted, "Section 720 of New York's Business Corporation Law

expressly authorizes a corporation or bankruptcy trustee to sue the corporation's officers and

directors for breach of fiduciary duty, including misappropriation or diversion of assets."  *In re

Keene Corp.*, 164 B.R. at 853.

Under the *Wagoner* rule, whether a claim belongs to the estate depends on what claims

the corporation possessed prior to bankruptcy.  *Wagoner,* 944 F.2d at 119.  As this Court has

observed, "[a] trustee's standing 'coincides with the scope of the powers the Bankruptcy Code

gives a trustee' and derives from the estate's right to sue.'"  *Silverman v. H.I.L. Assocs. Ltd.* (*In

re Allou Distribs., Inc.*), 387 B.R. 365, 386 (Bankr. E.D.N.Y. 2008) (quoting *Wagoner*, 944 F.2d

at 118).  And as this Court has also noted, "[s]tanding to bring an action is a 'threshold issue in

all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in

federal court.'"  *In re Allou Distribs., Inc.*, 387 B.R. at 386 (quoting *Wagoner*, 944 F.2d at 117).

The Board Defendants argue that under *Wagoner* rule and the equitable doctrine of *in

pari delicto,* "a plaintiff who is an active and voluntary participant in some tort or wrong – here,

accepting tuition while SLA allegedly knew or should have known it was unlikely to conduct a

semester . . . cannot bring a claim against its co-tortfeasors."  Board Mem. at 17.  *See* Board

Reply at 13.  They point to three "critical facts" in support of their argument:  first, that the

Chapter 7 Trustee does not allege they took the tuition money for themselves; second, that the

parent creditors have already commenced an action on this claim and can recover from the

bankruptcy estate; and third, that the Chapter 7 Trustee "possesses a superior remedy:  he can seek to set aside the payments of the funds to other creditors."  Board Mem. at 17.

The Chapter 7 Trustee responds that in *Wagoner*, the Second Circuit considered claims brought against a third party, "not the corporation's own officers and directors."  Opp. at 19. And he points to allegations in the Complaint that the Board Defendants "wasted and mismanaged those collected tuition payments when they allowed SLA to use the funds for purposes other than returning the monies to the tuition paying parents," in breach of their fiduciary duties to SLA.  Opp. at 20.  And this, he asserts, is sufficient to establish that his claims against the Board Defendants are not barred or rendered implausible by the *Wagoner* rule.  *Id*.

As the Second Circuit found in *Wagoner*, a "bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors."  *Wagoner,* 944 F.2d at 118.  And as a consequence, the Chapter 7 Trustee could not, for example, bring an action against the Board Defendants on behalf of the parent creditors for the refund of their tuition payments.  But the Chapter 7 Trustee is permitted – and indeed, may be obliged – to investigate and pursue actions to recover property of the estate.

And here, the record shows that this is what the Chapter 7 Trustee has done in bringing these claims for breach of fiduciary duty against SLA's fiduciaries, the Board Defendants. *Wagoner,* 944 F.2d at 118 (holding that the trustee "may only assert claims held by the bankrupt corporation itself").  To be sure, the Board Defendants are correct to note that the parent creditors have brought their own action to recover their tuition payments.  Board Mem. at 17. And should they – or the Chapter 7 Trustee – succeed in those claims or the claims here, the parent creditors will be entitled to no more than a single recovery.  But here again, at this stage in these proceedings, the plausibility of the Chapter 7 Trustee's claims concerning the collection

and use of the parent creditors' tuition payments is not defeated by the *Wagoner* rule.

For these reasons, and based on the entire record, the Board Defendants have not shown that the Chapter 7 Trustee's claims concerning the collection and use of the parent creditors' tuition payments must be dismissed because they are barred by the *Wagoner* rule.

### Whether the Board Defendants Have Shown that the Chapter 7 Trustee's Claims Must Be Dismissed Because They Are Barred by the Business Judgment Rule

The third question that the Court addresses is whether the Board Defendants have shown that the Chapter 7 Trustee's claims must be dismissed because they are barred by the business judgment rule.

The business judgment rule provides important and meaningful protections to directors who are meeting their obligations to act as good fiduciaries and stewards of the corporations that they serve. It embodies and gives effect to the "'presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'" *In re Brooklyn Hosp. Center*, 341 B.R. 405, 410 (Bankr. E.D.N.Y. 2006) (quoting *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*)*,* 147 B.R. 650, 656 (S.D.N.Y. 1992)).

Courts in this Circuit recognize that the threshold requirements for the protection of the business judgment rule are, in substance, disinterestedness, due care, good faith, and in some cases, the absence of an abuse of discretion or waste of corporate assets. As one court observed, the presumption afforded by the business judgment rule "shields corporate decision-makers and their decisions from judicial second-guessing when the following elements are present: '(1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets.'" *Id.* Viewed

another way, in order to gain the protection of the business judgment rule for decisions or inaction that may, in hindsight, appear to be mistaken, these requirements must be met.

And at the pleadings stage, "[t]o overcome the presumption of legitimacy accorded to business decisions of the kind attacked here, the Second Circuit has held that a plaintiff must 'allege that the directors acted fraudulently or in bad faith; allegations of "waste", standing alone, will not be enough.'"  *Lippe*, 230 B.R. at 916-17 (quoting *Stern v. General Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991)).  *See In re Integrated Res., Inc.,* 147 B.R. at 656 (stating that "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity").

The Board Directors argue that "[m]embers of a board of directors who [act] in good faith and in the honest exercise of business judgment are protected by the business judgment rule."  Board Mem. at 9 (citing *Levandusky v. One Fifth Avenue Apartment Corp.*, 75 N.Y.2d 530, 537-38 (1990)).  And they state that "the business judgment rule operates to immunize corporate directors from liability for negligence in actions taken in good faith and in the exercise of honest judgment for a proper corporate purpose."  Board Mem. at 11.

The Chapter 7 Trustee responds that "[a]s a threshold matter, the Court 'should not consider whether a defendant's conduct is protected by the business judgment rule on a motion to dismiss.'"  Opp. at 7 (quoting *AmeriFirst Bank,* 757 F. Supp. at 1376).  To the extent that the Court considers these arguments at this time, the Chapter 7 Trustee points to the decisions of several courts within the Second Circuit that have determined, in substance, that in order to state a plausible claim, a plaintiff must "'allege that the officer or director acted fraudulently or in bad faith, lack[ed] disinterested independence, ***or closed her eyes to the corporation's affairs and completely failed to act***.'"  Opp. at 7 (quoting *In re Mundo Latino Market Inc.*, 590 B.R. at 617)

(emphasis in Opp.).  And the Chapter 7 Trustee points to, among other things, the Complaint's allegations as to the Board Defendants' actions and omissions, and statements and "admissions" by the Board Defendants and Ms. Wilkin in their Rule 2004 examinations, in support of his position that, notwithstanding the protections afforded by the business judgment rule, he has pleaded plausible claims in the Complaint.  *See* Opp. at 10-18.

It is worth noting that the protections of the business judgment rule would be flimsy indeed if conclusory allegations at the pleadings stage, without more, were sufficient to establish the plausibility of a fiduciary breach claim.  That is, more than bare conclusory allegations are required.  At the same time, a fiduciary's performance of his or her duties is – necessarily – a fact-intensive matter, and courts should hesitate to dismiss fiduciary breach claims at the pleadings stage because the record *may* demonstrate, after discovery, a dispositive motion, or trial, that the protection of the business judgment rule is warranted.

With these competing objectives in mind, the Court considers the elements that have been identified as the core of business judgment protection, in light of the Complaint's allegations – disinterestedness, due care, good faith, and the absence of abuse of discretion or waste of corporate assets.

<u>Disinterestedness</u>

A key component of the business judgment rule is a board member's disinterestedness. As one court has observed, "'if plaintiff has made a prima facie showing of a lack of . . . disinterested independence . . . , the complaint may not be dismissed'" based on the business judgment rule alone.  *Patrick v. Allen*, 355 F. Supp. 2d 704, 711 (S.D.N.Y. 2005) (quoting *S.H. & Helen R. Scheuer Family Found., Inc. v. 61 Assocs.*, 179 A.D.2d 65, 69 (N.Y. App. Div. 1st Dep't 1992)).

A board director exercises "disinterested independence" when the director's decision is based on the "merits of the subject before the board rather than extraneous considerations or influences." *In re American Int'l Group, Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 431 (S.D.N.Y. 2010).  By contrast, a director is "interested" in a transaction "if the director stands to receive 'a direct financial benefit from the transaction'" that differs from any general shareholder or in the case of a not-for-profit, stakeholder benefit. *Patrick*, 355 F. Supp. 2d at 711 (quoting *Marx v. Akers*, 88 N.Y.2d 189, 202 (1996)).

The Board Defendants do not dispute that the business judgement rule does not apply "where the directors acted in bad faith or were motivated by factors other than the corporation's interest."  Board Mem. at 9.  And they assert that the Chapter 7 Trustee has "failed to allege any act taken for an improper purpose" and instead, asserts "'upon information and belief' there were 'conflicts of interest.'"  *Id.*

The Chapter 7 Trustee responds that the Complaint sets forth several examples of conflicts of interest, and points to testimony from the Rule 2004 examinations of several of the Board Defendants.  As one example, he notes that Ms. Reimann was a paid consultant to SLA and "received discounted tuition for her granddaughter."  Compl. ¶ 88.  Similarly, Ms. Blasé "acknowledged that her then-law firm represented defendant Wilkin in connection with her purchase of a summer camp . . . in her individual name" for $200,000, which Ms. Wilkin borrowed from SLA and did not repay.  Compl. ¶ 92.  And Mr. Whitted "acknowledged that his company was a vendor to SLA and received payment of $2,000 to $4,000 per trimester." Compl. ¶ 93(a).  *See* Opp. at 12-17.

And in all events, the Chapter 7 Trustee responds that the question of a defendant's "interestedness" is "a question of fact" that is not appropriate to decide on a motion to dismiss.

Opp. at 7.

Here, the Court is satisfied that at this stage in these proceedings, the Chapter 7 Trustee's allegations in the Complaint – many of which are drawn directly from the Board Defendants' own Rule 2004 examination testimony – are sufficient to establish a plausible basis to conclude that the Board Defendants' actions were not marked by the measure of disinterestedness that is necessary to invoke the protections of the business judgment rule.

<u>Due care</u>

Another key consideration in assessing the application of the business judgment rule is that directors are required to exercise due care "[t]o earn the protection of the business judgment rule." *RSL Commc'ns*, 649 F. Supp. 2d at 198-99 (citing *Geltzer v. Altman* (*In re 1st Rochdale Co-op Group, Ltd.*), 2008 WL 170410, at *1 (S.D.N.Y. 2008)). That is, directors "must do more than merely avoid fraud, bad faith, and self-dealing." *In re 1st Rochdale Co-op Group, Ltd.*, 2008 WL 170410, at *1.

As one example, due care can mean "reasonable diligence in gathering and considering material information." *Id*. As another, "[d]irectors must exercise their 'honest judgment in the lawful and legitimate furtherance of corporate purposes.'" *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 274 (2d Cir. 1986) (quoting *Auerbach v. Bennett*, 419 N.Y.S.2d 619, 629 (1979)).

The Board Defendants argue that under the business judgment rule, "'the fiduciary would not be held liable'" just because their decisions "'turn[ed] out to be unwise or unsound.'" Board Mem. at 10 (quoting *Levine v. Levine*, 184 A.D.2d 53, 59 (N.Y. App. Div. 1st Dep't 1992)). At the same time, the Board Defendants observe that "[a]ll of the allegations alleged pertain to duty of care." Board Mem. at 10.

The Chapter 7 Trustee responds that, as the Second Circuit has plainly held, "'[d]irectors are also held to a standard of due care.  They must meet this standard with "conscientious fairness."'"  Opp. at 9 (quoting *Hanson Trust PLC*, 781 F.2d at 274 (quoting *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 569 (1984))).  He points to allegations in the Complaint that show that the Board Defendants did not exercise reasonable diligence in carrying out their duties to SLA, including in gathering and considering material information.  And many of these allegations, he notes, are drawn from the Board Defendants' testimony under oath in their Rule 2004 examinations.

For example, the Chapter 7 Trustee argues that during her Rule 2004 examination, Ms. Reimann stated that the Board should have "'"pressed for more accurate, regular, and professional financial records than what they actually received;'" failed to supervise Ms. Wilkin; and "'did not pay close enough attention to the financial aspects of the school.'"  Opp. at 14-15 (quoting Compl. ¶ 91).  Specifically, she admitted that the Board did not manage SLA's finances, approved a model which proved to be impossible to carry out financially, knew about SLA's inability to pay bills as they came due as early as 2019 and should have "pressed for more accurate and regular, and professional financial records than what we actually received."  Opp. at 14 (quoting Compl. ¶ 91).  She did not recall seeing an audit report of SLA until SLA's landlord commenced litigation.  Opp. at 14.

Similarly, in her Rule 2004 examination, Ms. Blasé acknowledged that SLA did not have a treasurer or vice president during the time that Ms. Blasé served on the board of directors, that SLA did not timely file taxes but should have, and that SLA's bookkeepers did not maintain accurate financial data entries.  *See* Opp. at 15-16 (citing Compl. ¶ 92).

And the Chapter 7 Trustee also argues that in his Rule 2004 examination, Mr. Whitted

testified that he did not recall "'annual reports as to the financial condition of the school being submitted to the Board at any annual meeting;'" did not "'realize'" that Ms. Wilkin "'held a title as Chair of the Board'" and thought that position was vacant; and "'was not aware that the landlord was claiming it was owed more than $6 million for rent and additional rent in arrears.'" Opp. at 16-17 (quoting Compl. ¶ 93). In addition, Mr. Whitted acknowledged that the "'data being presented to Defendant Wilkin by Joe Musso was inaccurate.'" Opp. at 17 (quoting Compl. ¶ 93).

Here too, the Court is satisfied that at this stage in these proceedings, the Chapter 7 Trustee's allegations in the Complaint, including many allegations drawn directly from the Board Defendants' own Rule 2004 testimony, are sufficient to establish a plausible basis to conclude that the Board Defendants' actions were not undertaken with the level of "reasonable diligence" and due care that is required to earn the protection of the business judgment rule.

<u>Good Faith</u>

A third consideration in assessing whether the business judgment rule renders a claim implausible at the pleadings stage is whether the complaint establishes plausible grounds to conclude that a board member did not act in good faith.

That is, good faith addresses whether, absent a breach of fiduciary duty and "[a]bsent claims of fraud, self-dealing, unconscionability, or other misconduct," a director acted "in good faith and in furtherance of the legitimate interests" of the corporation. *Shapiro*, 22 A.D.3d at 658. *See Levandusky,* 75 N.Y.2d at 540 (analogizing the business judgment rule to the standard of review of a not-for-profit cooperative board's business decisions and noting that the business judgment rule "permits review of improper decisions," such as in the case of a non-profit cooperative where the plaintiff may demonstrate that the action "has no legitimate relationship to

the welfare of the cooperative").  And good faith is embedded in the business judgment rule's

"'presumption that, in making a business decision, the directors of a corporation acted on an

informed basis, in good faith, and in the honest belief that the action taken was in the best

interests of the company.'"  *In re Brooklyn Hosp. Center*, 341 B.R. at 410 (quoting *In re*

*Integrated Res., Inc.,* 147 B.R. at 656).

The Board Defendants point out that the "Complaint fails to allege that [they] acted in

bad faith or were motivated by factors other than the corporation's interest."  Board Mem. at 9.

And they argue that their efforts to help SLA "become solvent again" were in the best interests

of the not-for-profit school's mission.  Board Reply at 10.  They argue, in substance, that

"operat[ing] an insolvent entity in the hopes that it improves its fortunes – even if that hope was

misplaced," is not the same as a lack of good faith or a breach of fiduciary duty.  Board Mem. at

5.  And the Board Defendants state that the Complaint does no more than allege that they did not

cause "the Debtor to terminate its operations earlier, in order to result in a minor overall loss, and

that their failure to do so was unreasonable."  *Id.*

The Chapter 7 Trustee responds, in substance, "[t]he business judgment rule provides no

defense where, as here, the board has wholly failed to exercise any judgment whatsoever."  Opp.

at 17.  And he notes that "the business judgment rule does not provide a defense to claims of

gross negligence."  Opp. at 18.  And he points to in *In re Lemington Home for the Aged*, where

the court upheld a $2.25 million judgment for gross negligence, jointly and severally, against a

not-for-profit's former directors and officers, for "relying on incompetent officers and lack of

oversight," including:

> not maintain[ing] proper minutes of meetings or regular attendance, provided[ing]
> no meaningful oversight of the nonprofit's financial operations, . . . [not filling]
> the position of treasurer . . . [or setting up] a finance committee . . . , even though
> required by the bylaws, . . . , rely[ing] on the CFO, even after learning he did not

maintain customary financial records.

Opp. at 18 (citing *Official Comm. of Unsecured Creditors v. Baldwin* (*In re Lemington Home for the Aged*), 777 F.3d 620 (3d Cir. 2015)).

Here, viewing the Complaint as a whole, it is plain that the Chapter 7 Trustee's allegations do much more than assert – with the benefit of hindsight – that the Board Defendants should have moved more quickly to terminate SLA's operations and minimize the school's eventual losses.  Instead, he has alleged facts that, if established at trial, would support the conclusion that the board directors did not "[act] on an informed basis, in good faith, and in the honest belief that the action was taken was in the best interests" of SLA.  *In re Brooklyn Hosp. Center*, 341 B.R. at 410.

These include, among other allegations, that she and the Board did not have a policy for overseeing a defalcating employee and ensuring financial obligations were paid; that Ms. Wilkin and the Board did not have a "'clear picture'" of SLA's financial situation and relied upon "'wildly inaccurate'" budget projections to approve a model which proved to be "'impossible to carry out financially'"; and that the Board should have known that Ms. Wilkin borrowed money from SLA to acquire her summer camp, especially given the fact that Ms. Blasé's then-law firm represented Ms. Wilkin in that purchase.  Opp. at 11-12 (citing and quoting Compl. ¶¶ 55, 58); Opp. at 14 (quoting Compl. ¶ 91); Opp. at 15 (citing Compl. ¶ 92).

Put another way, the Court is satisfied that at this stage in these proceedings, the Chapter 7 Trustee has set forth allegations in the Complaint, again including many allegations drawn directly from the Board Defendants' own Rule 2004 testimony, that are sufficient to establish a plausible basis to conclude that the Board Defendants did not act in good faith in the discharge of their duties owed to SLA as needed to come within the scope of the business judgment rule.

<u>No abuse of discretion or waste of corporate assets</u>

The final consideration noted by courts in considering whether the protection of the business judgment rule is warranted is whether there has been no abuse of discretion or waste of corporate assets.

The Board Defendants argue that the Complaint's allegations do not amount to a plausible basis to conclude that they engaged in any abuse of discretion or waste of SLA's assets. Reply at 10.  They state:

> "Waste of assets" is a term of art – it is not a loophole that holds that the business judgment rule simply does not apply where one alleges that assets were wasted because they were not put to the best possible use.  Rather, "waste" refers to "the diversion of corporate assets for improper or unnecessary purpose."

Board Mem. at 12 (quoting *Aronoff v. Albanese,* 85 A.D.2d 3, 5 (N.Y. App. Div. 2d Dep't 1982)).

The Chapter 7 Trustee responds that the Board Defendants breached their fiduciary duties in many ways, and several of these amount, in substance, to an abuse of their discretion or waste. These include "failing to ensure that SLA was paying payroll withholding taxes . . . [resulting] in SLA having assessed against hundreds of thousands of dollars in penalties and interest," and "failing to ensure that IRS Form 990s were filed . . . causing [SLA] to lose its tax exempt status." Opp. at 12.  These also include "permit[ting], or [being] so neglectful they did not even realize, that Wilkin had borrowed $200,000 from [SLA] for the purpose of purchasing a summer camp in her individual name."  Opp. at 13.  *See* Compl. ¶¶ 65-72.

Here, the record shows that the Chapter 7 Trustee has set forth allegations sufficient to establish plausible grounds to conclude that the Board Defendants' actions and omissions amounted to an abuse of their discretion, and led to losses that amounted to waste of SLA's assets.  The Complaint also sets forth allegations that, if proven, would establish that the Board

Defendants did not "discover that SLA engaged in activities that resulted in its financial demise, [causing] substantial losses of tuition deposits and funds," despite knowing that the school was insolvent, did not "ensure, devise, implement and maintain proper internal financial controls and operating procedures with respect to SLA's affairs," and did not "preserve and safeguard SLA's resources, and thereby recklessly and negligently dissipated such resources." Compl. ¶¶ 103-05.

As a consequence, the Court is satisfied that at this stage in these proceedings, the Chapter 7 Trustee has set forth allegations in the Complaint that are sufficient to establish a plausible basis to conclude that the Board Defendants abused their discretion as SLA's fiduciaries, and engaged in or did not prevent the waste of SLA's corporate assets.

*          *          *

For these reasons, and based on the entire record, the Board Defendants have not shown that the Chapter 7 Trustee's claims must be dismissed because they are barred by the business judgment rule.

### *Whether the Board Defendants Have Shown that the Chapter 7 Trustee's Claim for An Accounting Must Be Dismissed*

The fourth question that the Court addresses is whether the Board Defendants have shown that the Chapter 7 Trustee's claim for an accounting must be dismissed.

The Board Defendants argue that the Chapter 7 Trustee's claim for an accounting is "facially defective" because he does not allege a necessary element – that is, "[t]here is no allegation that Defendants ever received a single asset that could be returned to the estate for the benefit of creditors, or any property that could impose upon them the burden of an account." Board Mem. at 18. They also argue that "there is no allegation of any demand for an accounting." *Id*.

The Chapter 7 Trustee responds that the Complaint sets forth a plausible claim for an

accounting, for several reasons.  He points to decisions of New York appellate courts holding

that "'[t]he mere existence of a fiduciary relationship gives rise to a claim for an accounting.'"

Opp. at 21 (quoting *Dawes*, 176 A.D.3d at 474).  And this, he notes, has been described as "'an

absolute right . . . notwithstanding the existence of an adequate remedy at law.'"  Opp at 21

(quoting *Koppel*, 125 A.D.2d at 244).

The parties agree that the elements of a claim for an accounting have been identified in *In

re State Street Associates, L.P.*  These are: "(1) relations of a mutual and confidential nature; (2)

money or property entrusted to the defendant imposing upon him the burden of accounting; (3)

that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a

refusal."  *In re State Street Assocs., L.P.*, 323 B.R. at 561.  *See* Board Mem. at 18; Opp. at 20-21.

Here, the record shows that the Chapter 7 Trustee has alleged each of the elements of his

accounting claim in the Complaint.  As to the first element, "relations of a mutual and

confidential nature," there can be no doubt that the Complaint alleges that each of the Board

Defendants is a fiduciary of SLA.

As to the second element, "money or property entrusted to the defendant imposing upon

him the burden of accounting," here again, it is plain that the Complaint adequately alleges that

each of the Board Defendants had a role in the management of SLA's assets, cites to distinct

assets that were assertedly wasted and mismanaged by the Board Defendants, including partially

waiving Ms. Wilkin's daughter's and Ms. Reimann's granddaughter's tuition, lending SLA's

funds to Ms. Wilkin, and the improper collection and use of tuition funds, including the funds

that are the subject of the parent creditors' claims.  *See, e.g.*, Compl. ¶¶ 91-93 (detailing Rule

2004 admissions by members of the Board regarding Ms. Wilkin and the Board's management

of SLA's assets); Compl. ¶¶ 74, 31 (noting specific assets that were wasted or mismanaged, such

as $500,000 incurred by SLA for breaching their lease and incurring "hundreds of thousands of dollars in penalties and interest" for failing to pay taxes in a timely manner); Compl. ¶¶ 83, 50 (alleging that Ms. Wilkin and Ms. Reimann received tuition waivers); Compl. ¶¶ 34-35 (detailing SLA's loan to Ms. Wilkin for the purpose of purchasing the summer camp); Compl. ¶¶ 46-49 (alleging improper collection and use of tuition).

As to the third element, that there is no adequate remedy at law, the Board Defendants have not identified an alternative remedy at law that is available to the Chapter 7 Trustee, and indeed, seek the dismissal of each of his claims. And notably, courts have held that in the case of a fiduciary relationship, that relationship alone "'gives rise to a claim for an accounting.'" Opp. at 21 (quoting *Dawes*, 176 A.D.3d at 474). And this is "'an absolute right . . . notwithstanding the existence of an adequate remedy at law.'" Opp. at 21 (quoting *Koppel*, 125 A.D.2d at 244).

And finally, as to the fourth element, that "in some cases, a demand for an accounting and a refusal," to the extent that this requirement is applicable here, it has been satisfied in substance by the extensive Rule 2004 examination process that the Chapter 7 Trustee undertook in connection with his investigation of these claims. And as he states, "[t]he Trustee Rule 2004 Applications still constitute a demand for an accounting from each of the respective Defendants." Opp. at 22.

For these reasons, and based on the entire record, the Board Defendants have not shown that the Chapter 7 Trustee's claim for an accounting must be dismissed.

*Whether the Board Defendants Have Shown that the Chapter 7 Trustee's Claims Must Be Dismissed Because the Claims Do Not Adequately Allege that Their Actions or Failures To Act Damaged SLA*

The fifth question that the Court addresses is whether the Board Defendants have shown that the Chapter 7 Trustee's claims must be dismissed because he does not adequately allege that

their actions or failures to act caused damage to SLA.

The Board Defendants argue that "[w]hile the Complaint charges defendants with failing to prevent SLA from going out of business, it does not plead facts establishing *particular* losses caused by *specific* reaches of any duty or identify opportunities to avoid such losses or opportunities to turn them into profit."  Board Mem. at 14.  As to each of the principal categories of alleged damages – SLA's tax debts, SLA's landlord's claims for unpaid rent, and the parent creditors' claims for tuition payments – the Board Defendants argue, in substance, that the Chapter 7 Trustee has not identified particular acts or omissions by the Board Defendants that would have somehow reduced or avoided these costs.  *See* Board Mem. at 14-15.

The Chapter 7 Trustee responds that under New York law, "'[t]he measure of damages for breach of fiduciary duty is the amount of loss sustained, including lost opportunities for profit on the properties by reason of the faithless fiduciary's conduct.'"  Opp. at 25 (quoting *105 E. Second St. Assocs. v. Bobrow*, 175 A.D. 746, 747 (N.Y. App. Div. 1st Dep't 1991)).  And he notes that for a breach of fiduciary duty claim, "causation is subject to a lower standard" than in a typical tort claim, in order "to address the seriousness and strict standards to which we hold fiduciaries and as an aid in disincentivizing fiduciary bad behavior."  Opp. at 25 (citing cases).

At the outset, it is worth noting that the question the Court must address is the *plausibility* of the Chapter 7 Trustee's claims, including his allegations as to damages – not the *persuasiveness of the evidence* that he may present in support of those claims.  And here, the record shows that in the Complaint, the Chapter 7 Trustee has adequately set forth allegations that connect the Board Defendants' actions and failures to act to the losses allegedly suffered by SLA.

For example, as to SLA's tax debts, the Chapter 7 Trustee alleges that the Board

Defendants did not "ensure that SLA was making payroll withholding taxes and unemployment taxes" to the appropriate tax authorities, leading to the filing of proofs of claim by the IRS of more than $700,000 and by the New York State Department of Taxation and Finance of more than $100,000.  Compl. ¶ 65.  And this, he alleges, led to the assessment of "hundreds of thousands of dollars in penalties and interest which could have been avoided if timely payment been made."  Compl. ¶ 66.  *See* Compl. ¶¶ 67-68 (asserting that Ms. Wilkin and the Board Defendants did not ensure that IRS Form 990s were filed and withdrew an offer in compromise with the IRS).

As to SLA's landlord's claim for unpaid rent, the Chapter 7 Trustee alleges, in substance, that the Board Defendants' "gross negligence and recklessness" in the mismanagement of SLA's relations with its existing landlord and its prospective landlord at a new location caused SLA to "incur[] lease obligations that were clearly far beyond the ability of SLA to pay" and to have "less bargaining power with its new landlord," leading to unfavorable lease terms and the entry of a judgment of more than $6.1 million in favor of its prior landlord.  Compl. ¶¶ 73, 74, 75.

And as to the claims for tuition asserted by the parent creditors, the Chapter 7 Trustee points out that the Board Defendants "notified the parents of the [enrolled] students that the school would not be opening for the 2021-2022 fall term, a mere 13 days before the scheduled commencement of the school term."  Compl. ¶ 76.  And he alleges that the Board Defendants "did not act with transparency with respect to the parents and the school community," leading to the parent creditors' tuition claims.  Compl. ¶ 77, 82.

For these reasons, and based on the entire record, the Board Defendants have not shown that the Chapter 7 Trustee's claims must be dismissed because they do not adequately allege that their actions or failures to act caused damages to SLA.

<u>*Whether the Board Defendants Have Shown that the Chapter 7 Trustee's Third and Fifth Claims,*</u>
<u>*for Gross Negligence and/or Recklessness and for Breach of the Duty of Loyalty and Obedience*</u>
<u>*as SLA Board Members, Must Be Dismissed Because They Are Duplicative of His Second Claim,*</u>
<u>*for Breach of Fiduciary Duty*</u>

The sixth question that the Court addresses is whether the Board Defendants have shown that the Chapter 7 Trustee's Third Claim, for gross negligence and/or recklessness in fulfilling their duties as SLA board members, and his Fifth Claim, for breach of the duty of loyalty and obedience as SLA board members, must be dismissed because they are duplicative of his Second Claim, for breach of statutory and common law breach of fiduciary duty.

The Board Defendants argue that the Chapter 7 Trustee's claims for gross negligence and/or recklessness, and for breach of the duty of loyalty and obedience are no more than restated versions of his claim for breach of fiduciary duty, and therefore must be dismissed. They also assert that "the claims allege many of the same facts," and explicitly begin with the allegation that Chapter 7 Trustee "'repeats, reiterates, and realleges'" the preceding allegations. Board Mem. at 15. They also note that several allegations in these Claims are "almost identical" and make the same assertion that the Board Defendants "were responsible for managing, ensuring, and overseeing the establishment, implementation, and maintenance of the books and records of SLA." Board Mem. at 16.

The Chapter 7 Trustee responds that his claims "for breach of fiduciary duty, gross negligence and/or recklessness and breach of duty of loyalty and obedience are not duplicative of each other." Opp. at 28. And he notes that "'Rule 8 [] allows parties to plead in the alternative.'" Opp. at 28 (quoting *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503, at *7 (S.D.N.Y. 2003)). The Chapter 7 Trustee also observes that "[e]ven if a cause of action may eventually be determined to be duplicative of another cause of action – such as breach of fiduciary duty or breach of loyalty – plaintiffs may proceed on alternative theories at

this early state of the litigation.'"  Opp. at 28 (quoting *ARB Upstate Commc'ns LLC v. R.J. Reuter, LLC*, 93 A.D.3d 929, 934 (N.Y. App. Div. 3d Dep't 2012)).  And separately, the Chapter 7 Trustee notes that each of these claims has different and distinct elements.  Opp. at 28.

At the outset, here, the record shows that the Board Defendants are correct in their observation that the Chapter 7 Trustee's claims arise, in substance, from many of the same alleged facts and circumstances, including that they "were responsible for managing, ensuring, and overseeing the establishment, implementation, and maintenance of the books and records of SLA."  Board Mem. at 16.  But this does not mean that the Chapter 7 Trustee's claims are somehow impermissibly duplicative in a way that mandates their dismissal.  Nor, in the context of a motion to dismiss, does this render any of the claims implausible.

And they are also correct that the Chapter 7 Trustee – like many plaintiffs asserting multiple claims – follows the pleading form of incorporating by reference some and even all of the preceding allegations in asserting his claims.  But here again, this does not mean that the Chapter 7 Trustee's claims are somehow impermissibly duplicative or implausible in a way that mandates their dismissal.

In addition, and separately, while the Chapter 7 Trustee's claims for breach of fiduciary duty, gross negligence and/or recklessness and breach of duty of loyalty and obedience have several similarities and arise from many of the same alleged actions and failures to act by the Board Defendants, each of these claims has distinct and different elements.

That is, the elements of the Chapter 7 Trustee's Second Claim against the Board Defendants, for a breach of fiduciary duty under New York law are "(1) the existence of a fiduciary duty; (2) a knowing breach of that duty; and (3) damages resulting therefrom." *Schwartzco*, 60 F. Supp. 3d at 352 (citing *Johnson*, 660 F.3d at 138).

And the elements of the Chapter 7 Trustee's Third Claim against the Board Defendants, for gross negligence and/or recklessness in fulfilling their fiduciary duties, are first, that the Board Defendants be "in contractual privity or have a relationship 'so close as to approach that of privity,'" with SLA. *Pension Comm. of Univ. of Montreal Pension Plan,* 446 F. Supp. 2d at 198-99 (quoting cases). And this claim requires "'(1) [an] existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" *Schwartzco*, 60 F. Supp. 3d at 355 (quoting *Purchase Partners*, 914 F. Supp. 2d at 497).

Finally, the elements of the Chapter 7 Trustee's Fifth Claim against the Board Defendants, for breach of the duty of loyalty and obedience, require an agent "to be loyal to his employer," not "'act[] in any manner inconsistent with his agency or trust,'" and "'exercise the utmost good faith and loyalty in the performance of his [or her] duties.'" *Phansalkar*, 344 F.3d at 200 (quoting *Western Elec. Co.*, 41 N.Y.2d at 295). And in the context of a fiduciary relationship, a fiduciary may not "intentionally act[] with a purpose other than that of advancing the best interests of the corporation." *In re WonderWork*, 626 B.R. at 112 (citing *In re WonderWork*, 611 B.R. at 194-95). For instance, where "the fiduciary has a conflict of interest or fails to act in good faith," the fiduciary would not be acting in the best interest of the corporation or not-for-profit. *Id*.

That is, while there is undoubtedly some overlap, and perhaps considerable overlap, in the facts alleged and the proof that will be required to establish each of these claims, it is also undoubtedly the case that at this stage in these proceedings, the Chapter 7 Trustee may proceed on alternative claims that may arise from the same set of facts and circumstances. And separately, while his claims for claims for breach of fiduciary duty, gross negligence and/or

recklessness and breach of duty of loyalty and obedience have several similarities and arise from many of the same alleged actions and failures to act by the Board Defendants, these claims are not the same.  They have distinct and different elements, and will require particular proof.  And none of these Claims is rendered implausible by the fact that each is set forth in the Complaint.

For these reasons, and based on the entire record, the Board Defendants have not shown that the Chapter 7 Trustee's Third Claim, for gross negligence and/or recklessness in fulfilling their duties as SLA board members, and his Fifth Claim, for breach of the duty of loyalty and obedience as SLA board members, must be dismissed because they are impermissibly duplicative of his Second Claim, for breach of statutory and common law breach of fiduciary duty.

*          *          *

The Court has considered all of the other arguments that have been advanced by the Board Defendants, and concludes that they are not otherwise entitled to the relief that they seek.

In sum, based on the entire record, and for the reasons stated herein, the Court concludes that in this adversary proceeding, the Chapter 7 Trustee has adequately alleged each of the elements of plausible claims for relief for his Second Claim for Relief, for breach of statutory and common law fiduciary duties; his Third Claim for Relief, for gross negligence and recklessness in fulfilling their duties; in his Fourth Claim for Relief, for an accounting for corporate waste; and in his Fifth Claim for Relief, for breach of duty of loyalty and obedience.

### <u>Conclusion</u>

For the reasons stated herein, and based on the entire record, the Motion to Dismiss of the Board Defendants under Federal Rule of Civil Procedure 12(b)(6), on grounds that the Chapter 7 Trustee does not state a claim upon which relief may be granted, is denied.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
May 7, 2024

Elizabeth S. Stong
United States Bankruptcy Judge